*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-189

SEPTEMBER TERM, 2014

In re M.W. and C.W., Juveniles  } APPEALED FROM:
  }
  } Superior Court, Lamoille Unit,
  } Family Division
  }
  } DOCKET NO. 44/45-6-11 Lejv

  Trial Judge: Timothy B. Tomasi

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her parental rights to her children M.W. and C.W., born in July 2009 and October 2010, respectively. Mother argues that the court erred in assessing her parenting ability in isolation when grandmother played a significant role in assisting mother with childcare. We affirm.

The court found the following by clear and convincing evidence. Mother first came to the attention of the Department for Children and Families (DCF) in July 2009, around the time of M.W.'s birth, when it received reports that mother was drinking and using drugs. DCF investigated and monitored mother's care of M.W. The DCF social worker observed that M.W. was delayed in motor functions and verbal skills. Mother did not follow recommendations for improvement and cancelled visits with providers. In May 2010, DCF filed a petition alleging M.W. was a child in need of care or supervision (CHINS). The court issued a conditional custody order requiring mother to undergo a substance-abuse assessment, to enroll M.W. in a special daycare center, and work on M.W.'s development delays. In October 2010, C.W. was born, and he experienced similar delays in his motor and verbal development. He also failed to properly gain weight.

In June 2011, DCF filed another CHINS petition, and the court issued several conditional custody orders over the ensuing months, requiring mother to enroll the children in a specialized daycare, follow recommendations for services for M.W. and maintain C.W.'s medical appointments. Mother brought the children to only half of their scheduled daycare visits, was inconsistent in ensuring the children went to medical appointments, and failed to fill out forms so the children could receive special services.

In March 2012, the court granted DCF's request for custody based on the children's lack of progress and mother's failure to follow the conditional custody orders. DCF placed the children in a foster home, where they have remained. Over the next months, mother was offered visits with the children with the assistance of family-time coaching. Mother missed several visits and was frequently late. She did not consistently attend pre-visit planning and became defensive and angry during post-visit evaluations. She did not attend the children's medical appointments. A psychological evaluation of mother was done that found she was cognitively impaired. The

family-time coach attempted to use alternative strategies to communicate appropriate parenting skills to mother, but mother continued to need prompting to address the children's needs and to set proper boundaries.

In March 2013, DCF filed petitions to terminate the parents' rights. A hearing was held in December 2013. The court granted the request in a written order in February 2014.[*] The court found that there was a change of circumstances based on stagnation. Although the court recognized that mother had made some occasional progress, the court found that the progress was not consistent or significant. The court explained that mother had not addressed the issues that led to the required family-time coaching—she continued to require prompting of necessary parenting skills, she left the children unattended, she was not responsive to C.W.'s needs when M.W. was present, she failed to engage in pre-visit planning and was hostile to comments on improving her parenting skills. The court also found that mother continued to have little insight into the reasons for state intervention, believing that she could adequately parent and not appreciating the importance of attending medical appointments.

The court further found that termination was in the children's best interests. The court found that there was no likelihood that mother would be able to make the necessary substantial progress to allow her to parent within a reasonable period of time. The court explained that mother had failed to make progress on necessary skills and the children required immediate stability given their young age and length of time in state custody. The court also found that mother did not play a constructive role in the children's lives because she could not meet their needs. The court found that the children were well adjusted in their foster home, had made significant improvements in their development and speech issues, and their foster parents hoped to adopt them. In assessing the children's relationships, the court noted that the children's grandmother often assisted mother in caring for the children.

To modify an existing disposition order, the court must engage in a two-step analysis by first determining if there is a substantial change in material circumstances and then analyzing whether termination is in the children's best interests. In re S.M., 163 Vt. 136, 138-39 (1994); 33 V.S.A. § 5113(b) (allowing court to modify an existing order based on change in circumstances). In assessing the child's best interests, the court must consider the statutory factors. See 33 V.S.A. § 5114 (listing statutory criteria). The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family division's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, mother argues that the court's best-interests analysis was flawed because the court considered mother's ability to parent "in a vacuum" without considering the assistance of the grandmother. According to mother, the evidence at trial indicated that grandmother assisted mother in parenting the children and mother's ability to provide parental care should be viewed with grandmother's contribution in mind.

There was no error. The family court is not required to determine the fitness of a parent's relatives in assessing whether termination is in a child's best interests. See In re S.W., 2008 VT 38, ¶ 13, 183 Vt. 610 (mem.) (concluding that court was not required to make findings on parental fitness of father's mother and sister). The critical questions at termination are whether

---

[*] The petition to terminate father's parental rights was also granted and is not challenged on appeal.

there was a change of circumstances and whether termination is in the child's best interests, which is demonstrated most significantly by whether the parent will be able to resume parenting duties within a reasonable period of time. Grandmother's relationship with the children was relevant to assessing the best interests of the children insofar as the court must consider "[t]he interaction and interrelationship of the child with his or her parents, siblings, foster parents, if any, and any other person who may significantly affect the child's best interests." 33 V.S.A. § 5114(a)(1). The family court properly considered grandmother's relationship with the children, noting that she had often helped mother care for the children when mother still had custody and that she loved the children.

The focus of the statute is on the "likelihood the parent will be able to resume or assume parental duties within a reasonable period of time" and "[w]hether the parent has played and continues to play a constructive role." Id. § 5114(a)(3)-(4) (emphases added). Even with grandmother's support and assistance, mother was inconsistent in getting the children to their doctor's appointments and day care and, over an extended period, demonstrated no ability to meet their needs. The court's findings on these critical factors, which were detailed and are not challenged on appeal, support the court's conclusion to terminate mother's rights.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

3